LIVINGSTON GENERAL TERM, August, 1848. *Maynard,*
*Marvin, Welles, and Selden,* Justices.

## BATTLE *vs.* THE ROCHESTER CITY BANK.

The cases in which a vendee is allowed to recover back money paid on a contract for the purchase of real estate, where the contract has been rescinded, are, 1st, where the rescission is voluntary, and by the mutual consent of both parties, and without the default or wrong of either; 2d, where the vendor is incapable or unwilling to perform the contract on his part; or 3d, where the vendor has been guilty of fraud in making the contract. *Per* WELLES, J.

In either of these cases, it would be against equity and conscience for the vendor to retain the money; and the law implies a promise, on his part, to refund it. *Per* WELLES, J.

But where the vendor has, in all respects, performed his contract, and the rescission is entirely in consequence of the unexcused default of the vendee, in making further payments, the latter cannot recover back the money paid by him.

ASSUMPSIT for money had and received. The cause was tried before DAYTON, C. J., at the Monroe circuit, Sept. 28, 1844. The suit was commenced on the 19th day of June, 1843. At the trial, the plaintiff's counsel, in his opening, stated his case, and offered to prove the same as follows, viz: That on the 19th day of October, 1841, at Rochester, by a certain agreement in writing, it was agreed between the plaintiff and defendants, that provided the said defendants should bid off a certain warehouse then owned by the plaintiff, which was to be sold on the 22d day of October then instant, under foreclosure of a mortgage assigned to said defendants by Harvey Ely, for the amount of said mortgage and interest, the defendants would allow the plaintiff nine thousand dollars for said warehouse and a dwelling house and lot on Allen-street, Rochester, (which house and lot were bid off by said bank at a sale by a master in chancery, on the 1st of July, 1841,) on account of said Battle's debt to said bank, including the amount of the aforesaid mortgage and interest; and in case the said sum of $9000 exceeded the debt due to said bank and the amount of the afore-

said mortgage and interest, then the plaintiff, by the agreement, was to purchase of said bank, and the bank to give said Battle a contract for, a certain farm owned by the bank, in the town of Greece, Monroe county, called the Chapin farm, containing 154 acres, for which said Battle was to pay said bank $30 per acre, and the excess, if any there should be as aforesaid, to be endorsed on said contract. That before, and on, and after the first of July, 1841, a verbal agreement existed between the plaintiff and defendants, in substance, that if the defendants should bid off the house and lot and warehouse, they should allow the $9000, &c. as aforesaid, and the balance, if any, should be paid in so much of the Chapin farm as would be necessary for that purpose; but it having been ascertained, in the opinion of the officers of the bank, that the farm could not conveniently be divided, the verbal agreement was merged in the written one above set forth. That on the 28th day of April, 1840, the plaintiff executed to the defendants a mortgage, by which the plaintiff conveyed to the defendants the house and lot above mentioned, in security for the payment of any debt he might be liable to pay to the defendants, either as the drawer or endorser of any promissory note or bill of exchange thereafter made, or any paper which might thereafter be discounted by said bank for the benefit of the plaintiff, according to the condition of a bond executed at the same time by said plaintiff, and if he should then pay, the bond and mortgage to be void. That the plaintiff was not indebted to the bank before the execution of said mortgage. That afterwards he became indebted to said bank by means of paper discounted for his benefit, and on the 22d day of December, 1840, his indebtedness consisted of four promissory notes of the last mentioned date, executed by the plaintiff, payable to the defendants as follows : one of $400 payable February 26, 1841 ; one of $2000 payable March 25, 1841 ; one of $2000 payable April 25, 1841 ; and one of $1000 payable May 25, 1841. That said notes not being paid, the defendants filed their bill in the court of chancery to foreclose said mortgage, and by decree of said court the mortgaged premises were sold by a master of said court, and bid off by,

and conveyed to, the said defendants, on the first day of July, 1841, which is the sale by the master and bidding off by the defendants first above mentioned. That said house and lot, though real estate, was not such as was requisite for said bank, for its accommodation in the convenient transaction of its business ; neither was it real estate which had been mortgaged to it in good faith by way of security for a loan or loans previously contracted, or for moneys due ; neither was it such as had been purchased at a sale or sales upon a judgment or judgments, decree or decrees, mortgage or mortgages, obtained or made for such debts; and that the same was, and, after the expected sale and purchase on the 22d day of October, 1841, would be equally true in relation to the warehouse. That said bank held a mortgage on the warehouse, executed by the plaintiff to said bank on the 3d day of December, 1840, to secure the same debt for which the four notes and the mortgage on the house and lot above mentioned were given, which mortgage was given to secure a debt actually due said bank before its execution, but which has never been foreclosed, and which was a lien on the warehouse subsequent to the mortgage to Ely, above mentioned, and also subsequent to the lien of a judgment obtained after the Ely mortgage, by the Canal Bank of Lockport against said Battle. That said defendants, to protect themselves from the prior liens aforesaid, had purchased of said Ely the said mortgage, and taken an assignment thereof, as mentioned in said agreement, had filed their bill in chancery in their own name, obtained a decree of foreclosure and sale, and caused the same to be advertised for sale, as mentioned in said agreement. That on the 22d day of October, 1841, the defendants bid off and took a conveyance of the said warehouse for a sum less than the Ely mortgage. That by means of all the premises herein before and after stated, (without the aid and consummation of the contract of the 19th of October, 1841,) none of said real estate was such as had been conveyed to said bank in satisfaction of debts previously contracted in the course of its dealings. That on the 22d day of October, 1841, or on some other day between that day and the 9th day of November,

1841, both inclusive, as of the 22d of October aforesaid, the said plaintiff and the said defendants accounted together of and concerning the moneys mentioned in said promissory notes, the interest which had accrued thereon, certain payments which had been made to apply thereon, and interest on said payments, and of and concerning the costs of the foreclosure of and sales by means of the two mortgages aforesaid, and of and concerning the $9000 agreed to be allowed for the two parcels of real estate, to wit, the house and lot and warehouse aforesaid ; which accounting was in pursuance of the agreement of the 19th of October first above mentioned, and was for the purpose of ascertaining the balance, if any, due the plaintiff, to be mentioned in and endorsed upon the agreement hereinafter set forth ; and upon that accounting, the defendants were found in arrear and indebted to the plaintiff in the sum of $1823,44, to be paid, as the agreement and understanding between the parties then was, by applying it as part payment for the Chapin farm, by mentioning it in and endorsing it as payment on the article then about to be executed, as hereinafter set forth. That on the 9th day of November, 1841, an agreement in writing was duly made and executed between the plaintiff and the defendants in words and figures following : " Articles of agreement made this ninth day of November, in the year of our Lord one thousand eight hundred and forty-one, between William Philpot, cashier of the Rochester City Bank, by authority of a resolution of the directors of said bank, of the first part, and William S. Battle, of the city of Rochester, state of New-York, of the second part, as follows, to wit : The said party of the first part hereby covenants and agrees with the said party of the second part, that he will sell and convey in fee, by a good and sufficient warranty deed, to the said party of the second part or his assigns, all that certain piece or parcel of land situate, lying and being in the town of Greece, in the county of Monroe and state of New-York, being the east half of lot (No. 1) number one in the first division of lots in the southwest part of township (No. 2) number two of the short range of townships in said town of Greece, bounded north, east and south by the

Battle *v.* The Rochester City Bank.

lines of said lot number one, and west by the west half of said lot, as conveyed to Asa Bennet by deed dated 16th April, 1836, containing (150) one hundred and fifty acres of land more or less. Also, five acres to be laid out in a square form on the north side of the ridge road, in the northeast corner of lot one hundred and forty, township one, short range, Greece—reference being had to William Sheppard's allotment—being the same premises conveyed to the Rochester City Bank by John C. Nash, master in chancery, by deed bearing date 31st July, 1841, upon the payment by the said party of the second part or his assigns, to the said party of the first part, of the sum of four thousand six hundred and fifty dollars and interest in manner following, to wit—in hand the sum of one thousand eight hundred and twenty-three dollars forty-four cents, and the balance ($2826,56) in five equal annual instalments from the first day of May next, with interest to be computed at seven per cent per annum from the 22d day of October last, and paid annually, and all taxes to be assessed on the said premises. And the said party of the second part covenants and agrees with the said party of the first part, to pay to him the said sum of money in manner aforesaid with the interest aforesaid, which payment is hereby declared to be a condition precedent to the execution of a deed by the said party of the first part. And in case of failure on the part of the said party of the second part to make either of the preceding payments when due, or in any respect to fulfil this contract, the same shall become void on such failure, if the party of the first part shall elect to rescind it, and on his previously giving notice of at least thirty days of such election, to be served personally on the party of the second part, provided he shall be in the county of Monroe, but otherwise to be served by notice in a public newspaper in said county for thirty successive days, and besides the party of the second part shall in case of such failure and consequent rescinding of this contract forfeit one hundred dollars as the ascertained and liquidated damages, and shall retain no legal or equitable interest in the premises after this contract is rescinded. The party of the second part may take immediate possession of the said

premises.    In witness whereof," &c.    That the sum of $1823,-
44 mentioned in the last mentioned contract, to be paid in hand,
is the same sum found due from the defendants to the plaintiff
on the accounting as above set forth, and that the same sum
was at the time of executing said agreement endorsed on the
back thereof as a payment of such sum on the contract by the
defendants by their cashier, and by their authority, in the words
and figures following : "$1823,44.    Nov. 9th, 1841, received on
the within contract eighteen hundred and twenty-three $\frac{44}{100}$
dollars according to its terms and conditions.    W. S. Philpot,
cash'r."    And thus the first mentioned agreement was (modified
as appears above) performed, and the respective parties, the plain-
tiff and defendants, thus had the benefit of it.    That the plain-
tiff, in pursuance of the right which he acquired by the contract
of November 9th, above set forth, entered into possession of the
said premises and continued to occupy the same until the last
mentioned contract was rescinded as hereinafter mentioned.
That the plaintiff having neglected to pay the defendants the
first of the five annual instalments therein mentioned, and a
large amount of interest due on said contract, the said defen-
dants, in pursuance of the power reserved and conferred on
them by the last mentioned contract so to do, elected to rescind
the same, and on the 12th day of May, 1843, in pursuance of
that power, caused a notice directed to said plaintiff to be per-
sonally served on him as follows :

  " Sir :  Take notice, that by the terms of an article of agree-
ment, bearing date November, 9th, 1841, (meaning the contract
last above set forth) made and executed by and between the
Rochester City Bank of the one part and yourself of the other
part, a payment of five hundred and sixty-five dollars and thir-
ty-one cents and a large amount of interest, became due and
payable from you on said articles of agreement, on the first day
of May instant, and that the same remains unpaid, and that
the said bank elects to declare said articles of agreement void
and the same be and is rescinded, unless the said payment with
the interest aforesaid be paid within thirty days from the ser-
vice of this notice, and that said bank will then and there re-

Battle *v.* The Rochester City Bank.

quire possession of the premises described in said agreement. Dated May 12th, 1843. Yours, &c. W. S. Philpot, Cash'r." That the plaintiff did not pay the money mentioned in said notice, or any part thereof, but within thirty days from the service of said notice, surrendered the possession thereof to the defendants, and the said defendants have ever since retained the possession thereof by the reception of the rents and profits thereof. That the defendants, by articles of agreement between them and John Weston and George H. Weston, made December 16th, 1841, agreed to sell and convey to said Westons, or either of them, the said house and lot in Allen-street, for the sum of three thousand eight hundred dollars, and in pursuance of that agreement, did afterwards, on the second day of August, 1842, by deed of bargain and sale of that date, sell and convey to the said George H. Weston the said house and lot, and did then and there receive of him a large sum of money, part of the purchase money, and took his bond and mortgage on the property for the balance; and the defendants did in and by said deed warrant to the said Weston, his heirs and assigns, the quiet and peaceable possession of the said premises against any person lawfully claiming the same or any part thereof. That Weston, in pursuance of said agreement, went into possession of said premises, and has ever since continued in possession thereof. That the amount for which the defendants bid off the house and lot at the master's sale was two thousand seven hundred dollars. That the defendants immediately on the sale and purchase by them of the warehouse property as above mentioned, entered into possession thereof and have ever since continued in possession, or the reception of the rents and profits thereof.

The counsel for the defendants thereupon, on said opening by the plaintiff's counsel, moved for a nonsuit, and his honor the circuit judge, being of the opinion that the plaintiff could not recover upon the facts stated in the opening, directed a nonsuit, which was entered. The plaintiff upon a bill of exceptions now moved to set aside the nonsuit, and for a new trial.

*S. Boughton,* for the plaintiff.

*H. Humphrey & E. D. Smith,* for the defendants.

*By the Court,* WELLES, J.    The plaintiff cannot and does not ask to have the case put in a more favorable aspect for him, than it will bear by looking at the transactions as commencing with the contract or articles of agreement for the sale to him by the defendants, of the farm in Greece, bearing date the 9th day of November, 1841, and by regarding the payment of $1823,44, endorsed upon the contract, as having been actually made in money at the time it was endorsed.    He claims to recover the amount thus paid, on the ground that the contract is rescinded, and it being rescinded, that there is so much money left in the defendants' hands which belongs to the plaintiff; there being nothing by virtue of which the defendants can retain it.    And he insists that his right to recover this money in no sense depends upon whether the contract was rescinded by his own or the defendants' fault.    That if it be once established that the contract is rescinded, the right to recover back the money paid on it follows as a matter of course, no matter for what cause, or in consequence of whose fault it was rescinded. And I think it incumbent upon the plaintiff to maintain a proposition as broad as this in order to sustain this action.

The cases in which a vendee is allowed to recover back money paid on a contract for the purchase of real estate, where the contract has been rescinded, are, 1st. Where the rescission is voluntary, and by the mutual consent of both parties, and without the default or wrong of either; 2d. Where the vendor is incapable or unwilling to perform the contract on his part; or 3d, where the vendor has been guilty of fraud in making the contract.    In either of those cases it would be against equity and conscience for the vendor to retain the money, and the law implies a promise on his part to refund it.    But in a case where the vendor has in all respects performed his contract, and the rescission is entirely in consequence of the unexcused default of the vendee in making further payments, to allow him to recover

back the money paid, would in my opinion be little short of offering a bounty for the violation of contracts.

In the case at bar, it is not pretended that the defendants have not fulfilled, to the letter, every part of the agreement on their part to be fulfilled, and the plaintiff, by his counsel, in his opening, admits that he neglected to pay the first of the five annual instalments mentioned in the contract. I confess myself entirely unable to find in any elementary treatise, or reported case, a principle recognized, which would allow the plaintiff to recover. In the case of *Ketchum* v. *Evertson,* (13 *John.* 365,) Spencer, J. in delivering the opinion of the court, says : "It would be an alarming doctrine to hold, that the plaintiffs might violate the contract, and because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have." Again ; " To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract, would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiff."

In the case of *Green* v. *Green,* (9 *Cowen,* 46,) which was an action to recover money paid by the plaintiff to the defendant, on an agreement for the purchase of land, on the ground that the contract was rescinded, Chief Justice Savage, who delivered the opinion of the court, held that the plaintiff was not entitled to recover, for the reason that he, and not the defendant, was in default. I refer to that case as containing a clear and practical illustration of the doctrine on the subject. The chief justice, after citing and commenting upon a number of decisions bearing on the question, remarks : " I forbear the citation of more cases. I have found none of a recovery, where the party wishing to consider the contract rescinded, has not shown a breach of the contract on the other side, or what is equal to it."

It has been, among other things, urged in behalf of the plaintiff, that the agreement in this case was rescinded in pursuance of the mutual consent of the parties, contained in the

Battle *v.* The Rochester City Bank.

agreement itself, and that the plaintiff was therein left at liberty to put an end to it, and that as he has done no more than the defendants virtually agreed he might do, he is not to be deemed in default, and that therefore according to one of the rules above laid down, he should be allowed to recover. But is this so? He covenanted to make the payments, and has failed, and the provision about rescinding was a right secured to the defendants, and not to the plaintiff. It did not prevent the defendants' enforcing the contract. They had an election to do so, or to treat it as rescinded on account of the plaintiff's default. The contract expressed what the law would have adjudged without it; and shall it be said, because the parties spread out in the contract those rights and liabilities which were substantially the legal consequences flowing from the contract, that therefore other conveyances shall be made to attach, which otherwise would not? Suppose the provision about rescinding had been left out of the contract, and in all other respects it remained, as it is— with, as I think is undeniable, time of payments essential—the covenant to pay independent—the payment of the money by the plaintiff made a condition precedent to the execution of a deed, &c.; the plaintiff makes default, and no further time is given by the defendants, and nothing occurs from which a waiver of strict performance can be inferred : I ask what is the party to do? He sees no prospect of his money being paid, and perhaps the plaintiff is bankrupt. I suppose he would have a right at once to treat the contract as rescinded, and sell the property to another, or to bring his action of ejectment and recover the possession, and the plaintiff would be without relief, either at law or in equity, in relation to the money advanced or the premises sold. At all events there can be no doubt but he would have a right to treat the agreement as rescinded upon reasonable notice to the vendee, to make payment, &c. This would be as liberal a view of the case in favor of the vendee as any of the authorities justify, even in cases where time is not of the essence of the contract. And I should think, under the circumstances of this case, looking at the amount of the payment which had become due, and the nature of the contract,

that thirty days' notice would not be unreasonably short. The time, in such cases, where nothing is to be done but paying money, should be such as to allow the party an opportunity to raise it by negotiating a loan or collecting it in from places where he may have it in deposit, and allowing reasonable time for remittance. He is not entitled to take time to earn the money. Now this is substantially provided for in the agreement, and I cannot see how that circumstance can vary the rights or liabilities of the parties.

I think one good test of the vendee's right to recover in these cases is his right to a specific performance of the contract upon his paying up what may be due. And judging this case by that criterion, I hazard nothing in saying that no adjudged case, nor any respectable dicta can be found which would entitle this plaintiff to the relief he asks for.

In my opinion, the nonsuit was properly granted, and the motion to set it aside should be refused.

MAYNARD, P. J. dissented.

                             Motion denied.(a)

(a) The above decision was affirmed by the Court of Appeals, in December, 1849

---

MONROE GENERAL TERM, January, 1849. *Johnson, Welles, and Selden*, Justices.