Scott, J.
The question in this case arises upon the sufficiency of the facts stated in the amended petition of the plaintiff to constitute a cause of action.
The petition, it will be observed, does not allege that the sheep were sold by the defendant to other persons before the day fixed by the contract for their delivery to the plaintiff. The allegation is merely that they were thus sold before the bringing of the suit, and the suit was not brought till about four weeks after the time of delivery agreed upon. It would be entirely consistent" with the statements of the petition, to assume that the alleged sale was made a week or a day before suit brought. There is also an entire absence of any allegation that the plaintiff was ready and willing, at the proper time and place, to perform the contract on his part, by accepting the delivery, and paying the residue of the contract price. And the defendant is charged with no such default as a refusal to *289 weigh and deliver the sheep to the plaintiff at the proper *time and place, upon the payment of the residue of the purchase money. Now, as the plaintiff’s right of recovery must rest on the facts stated in his petition, he must recover, if at all, let the facts which are not stated be as they may; and they are, therefore, to be assumed most strongly against him, in determining upon the sufficiency of his petition. We must, therefore, take it for granted that the failure in the full execution of this contract was caused solely by the default of the plaintiff himself; that he, without any excuse, refused to accept and complete the payment for the sheep, as he was bound by contract to do, although the defendant, at the proper time and place, was willing and offered to perform fully on his part.
The question, then, is, whether a subsequent resale of the property by the vendor to another, under these circumstances, will, per se, give the original vendee any legal claim upon him, in respect to the partial payment previously made under the contract.
The plaintiff’s counsel seem to assume, in their argument, that the agreement stated in the petition is such as to constitute a completed sale, and that the property in the sheep, though not the right of possession, passed by the contract to the purchaser. But the petition describes the contract rather as an agreement for a future sale and delivery. “ He agreed to sell,” etc., “ to be weighed and delivered at,” etc., “ on or before,” etc.; and it is certain that the sheep were to be weighed, and their price thus ascertained before delivery, by the vendor, or at least not by the purchaser alone. Under these circumstances, the rule is, that the property does not pass. 1 Parsons on Contr. 440, 441. Such sale is, at most, but conditional; the weighing and delivery on the one side, and the-payment of the remaining purchase money on the other, are conditions precedent to the passing either of the right of property or-tho right of possession. By the terms of the contract in this case, we have no doubt that the sheep were to be kept until the day of delivery, by the vendor, at his own expíense *and risk. But were it otherwise, the petition evidently does not contemplate a recovery of the value of the sheep as upon an unlawful conversion of them to the defendant’s use. It is not averred generally that the sale was wrongful, nor are facts stated which show it to have been so. It may have been made upon due notice to the vendee, in the proper assertion of the vendor’s lien for the unpaid balance, of the purchase money; and the proceeds may have been insuf *290 ficient to satisfy the lien. And even if it appeared that the proceeds were more than sufficient to satisfy the lien, yet the plaintiff does not seek to recover the overplus ; but evidently proceeds on the ground that the sale of the sheep by the defendant to other persons, operated, ipso facto, as a rescission of the plaintiff’s contract; and gave him the right to be restored to the condition in which he was before entering into it, by a return of the money paid upon it. It is for this he asks judgment; and this is the main ground taken in argument. Is it tenable? The petition shows, as -.we have seen, that the failure of the parties fully to execute this contract was owing solely to the plaintiff’s default; that the defendant fully discharged all his obligations, so far as the plaintiff’s default would permit; that he retained the ownership of the sheep, merely because the plaintiff, without excuse, refused to permit him to divest himself of it according to the terms of their agreement. By such default the plaintiff would seem to have lost or renounced all his conditional interest in the property. Can it he true, then, that any subsequent exercise, by the party not in default, of the rights incident to the absolute ownership thus forced upon :him, and involuntarily retained by him, may be regarded by :.the defaulting party as a rescission of the contract? The -docti’ine is apparently novel. ¥c have been referred to 1 Par-sons on Contr. 190, 191, in support of it; but we do not think rthe views of counsel are sustained by the authority. On the • contrary, we find the doctrine thus stated by him: “ G-enerally, as a contract can be made only by the consent of *all .‘.the contracting parties, it can be rescinded by the consent of mil, but this consent need not be expressed as an agreement. „If either party, without right, claims to rescind the contract, the .other party need not object, and if he permits it to be rescinded, fit will be done by mutual consent. Nor need this purpose of rescinding be expressly declared by the one party, in order to give to -the other the right of consenting, and so rescinding. There may be many acts from which the opposite party has a right to infer that the party doing them would rescind; and, generally, where ■ one fails to perform his part of the contract, or disables himself ■.from performing it, the other party may treat the contract as re-scinded. But not if he has been guilty of a default in his engagement, for he can not take advantage of his own wrong to defeat the contract.” '■There are many .authorities sustaining the principle last stated in *291 this extract. In Ketchum v. Evertson, 13 Johns. 359, it was said by the court (Spencer, J.): “It maybe asserted with confidence, that a party who has advanced money, or done an act in part performance of an agreement, and then stops short and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations, according to the contract, has never been suffered to recover for what has been thus advanced, or done. The plaintiffs are seeking to recover the money advanced on a contract every part of which the defendant has performed, as far as he could by his own‘'acts, when they have voluntarily and causelessly refused to proceed, and thus have themselves rescinded the contract. It would be an alarming doctrine to hold that the plaintiffs might violate the contract, and because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makés a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have. The defendant’s subsequent sale of the land does not alter the case. The ^plaintiffs had not only abondoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiff to recover back the money paid on the contract, would, in effect, be saying that the defendant could never sell it without subjecting himself to an action by the plaintiffs. Why should ho not sell ? The plaintiffs renounced the contract and peremptorily refused to fulfill it; it was in vain, therefore, to keep the land for them. The plaintiffs can not, by their own wrongful act, impose upon the defendant the necessity 6f retaining property which his exigencies may require him to sell. This would be most unreasonable and unjust, and is not sanctioned by any principle of law.”
This case, it will be perceived, grew out of a contract for the sale of real estate. The purchaser made a partial payment on the contract, but afterward refused to execute it further. TTpon a subsequent resale of the premises by the vendor, the purchaser brought this action of assumpsit to recover the money paid on the contract. The case is analogous to the present one, and the reasoning of the coui't is entirely applicable here.
The same principle is affirmed in Hudson v. Swift, 20 Johns. 23; Green v. Green, 9 Cowen, 46; Battle v. The Rochester City Bank, *292 5 Barb. 414; 1 McLean, 242. And such, upon principle, must be the strict legal rule.
The sale of the property in this case, by the defendant, was not in violation of his obligations under the contract, but the mere exorcise of his rights, in accordance with its implied stipulations. And the plaintiff having, by his voluntary default, abandoned the contract, the defendant might certainly maintain an action against him for its breach, and at the same time treat the property as his own. Both these rights are co-existent, and the assertion of the one does not preclude the exercise of the other. If he failed to make himself whole by the resale of the property, at a fairprice, he might proceed by action to recover such ^damages as would make up the deficiency. There is no injustice in this. It merely places the party not in default where he would have stood had the agreement been performed. But if the resale of the property was, per se, a rescission of the contract, no action could th&reafter be maintained upon it, and this measure of justice would be denied to a blameless party.
"We are fully aware that embarrassing questions have arisen, and that a conflict of authorities may be found, in cases somewhat analogous to the present, where a party has sought to recover, in indebitatus assumpsit, for a part performance of a special contract for the sale and delivery of personal property, at a specified time and place, and to be paid for thereafter, on a day certain, and where the plaintiff has failed, without sufficient excuse, to deliver the whole within the time limited. The right to such relief was denied in Witherow v. Witherow, 16 Ohio, 238. That was a case of some hardship, and the propriety of a rigid application of the rule in such a case may certainly be questioned. But the propriety of any rule which would encourage the violation of contracts is at least equally questionable.
The rule in New Hampshire proceeds on the principle of giving ■ compensation for the breach, and requiring the party not in default to account for any excess of benefit he has received from part performance. Britton v. Turner, 6 New Hamp. 481. And, certainly, no rule is admissible which would be more favorable to the party in default.
It does not appear, in this case, that the plaintiff’s default was other than purely voluntary, or that the defendant has received from him anything which, under the circumstances, it would be *293 equity or good conscience to retain. If the plaintiff have merits, they are not disclosed by his petition. And it will be time enough to overrule or narrow the application of the doctrine in Witherow *i>. Witherow, when a case is presented requiring such action in furtherance of justice.
Brinkerhoee, O. J., and Sutliee, Peck, and G-holson, JJ., concurred.