Honolulu, December 29th, 1876.

## SUPREME COURT—IN BANCO.

### OCTOBER TERM—1876.

*Harris and Judd, J. J.*

E. DELEMAR *vs.* THOS. H. HOBRON,—ACTION OF ASSUMPSIT.

THE right of a party to rescind a contract in the absence of fraud depends solely on the agreement of all parties, and springs either from the original terms of the contract or from a voluntary and mutual assent, and if a contract is to be rescinded at all, it must be rescinded *in toto* and the parties be put in *statu quo.*

Whether the acts of parties amount to a rescinding, is a question of fact for the jury.

OPINION BY HARRIS, J.

The history of this case in brief is as follows: On the 24th day of January, 1874, Thos. H. Hobron leased to Eugene Delemar and W. F. Sharratt, his plantation on the Island of Maui, with the privilege that Delemar and Sharratt might purchase the same at any time within five years for a

price set forth in the lease. On the 31st day of March, 1874, Delemar paid to Hobron $843.65, and took from him a receipt as follows:

"$843.65.

"Received of E. Delemar this 31st day of March, 1874, eight hundred and forty-three dollars and sixty-five cents for and on account of one undivided half of Grove Ranch Plantation, the said amount bearing interest at ten per cent. per annum, payable quarterly.

"(Signed)        THOS. H. HOBRON."

On the 26th day of April, 1875, the parties substituted a new lease for that dated the 24th of January, 1874, (similar in all respects) except that it was more specific in its terms and containing the same agreement of sale. On the 20th of December, 1875, Messrs. Delemar and Sharratt executed a paper setting forth that "whereas the said parties to these presents have heretofore been and now are engaged in business of sugar planters for their joint account as co-partners at the Grove Ranch Plantation, so called at said Makawao, and on the twenty-sixth day of April, A. D. 1875, did as joint lessees, execute with Thomas H. Hobron as lessor, a certain indenture or agreement of lease of certain lands situated in said Makawao, therein named as the Brewer Plantation and Grove Ranch.    *      *      *      *      *      *

"And whereas the said parties (Delemar and Sharratt) have cultivated the said leased land and managed and carried on the said plantation and business as co-partners aforesaid, and by reason of the premises having a joint interest as co-partners and co-lessees aforesaid in the said plantation.
   *      *      *      *      *      *

"And whereas also the said parties hereto for divers good reasons, them hereunto moving and particularly in consideration of the sum of four thousand and five hundred dollars paid by the said party of the second part unto the said party of the first part.  *   *   *   Has agreed to assign unto the

said party of second part all his interest, title and estate under or by reason of the said indenture or agreement of lease in the said plantation.   *   *   *   *

"And the said party of the second part hath likewise agreed and undertaken to discharge and pay all debts and sums of money which they, the said parties, do jointly owe to any person or persons for or by reason of their said joint business or co-partnership.   *   *   *   *

"Now therefore the said party of the first part for the consideration hereinbefore named doth grant, assign, transfer, and set over unto the said party of the second part all the right, title, interest and estate of him the said party of the first part, in and to the said indenture or agreement or lease and the premises thereby demised.   *   *   *

"In consideration whereof the said party of the second part for himself, his executors, and administrators doth hereby covenant, promise, and agree to and with the said party of the first part, his executors and administrators that he the said party of the second part, and his executors and administrators, shall and will at all times forever hereafter, save, keep harmless and indemnify the said party of the first part, and his executors and administrators, against all and every person and persons whomsoever to whom they the said parties hereto or either of them, are indebted or under legal obligations, touching or concerning the said co-partnership."   *   *   *   ,   *   *   *

On the same day to wit: The 20th of December, 1875, Messrs. Hackfeld & Co. and Mr. Thos. H. Hobron the defendant in this action, executed a release of partnership claims and debts to Delemar the plaintiff in this action in the following form:

"Know all men by these presents that the undersigned H. Hackfeld & Co. and Thos. H. Hobron of Honolulu, Oahu, creditors of Delemar and Sharratt, sugar planters, in consideration that W. F. Sharratt, a member of said firm of

Delemar and Sharratt has this day assumed all indebtedness of said firm by written deed of this date, hereby forever release and discharge Eugene Delemar a member of said firm from all liability and responsibility to us or either of us for any and all indebtedness of said firm.

"Witness our hands and seals this 20th day of December, 1875.

"(Signed)       H. HACKFELD & Co.   [L. S.]
"(Signed)       THOS. H HOBRON.   [L. S.]"

This appears to have completed the transaction as far as Delemar was concerned. It will be seen that the last paper recites the fact that Sharratt had assumed all the indebtedness as it was stipulated that he should do by the deed of dissolution between himself and Delemar.

And it will now be seen that for a valuable consideration, Delemar had assigned his interest in the lease to Sharratt, and Sharratt stood in the same relation to Hobron as Delemar and Sharratt had hitherto done; and on the same day, December 10th, Hobron signed an agreement that he would sell to Sharratt alone in like manner as he had agreed to sell to Delemar and Sharratt. In other words, Hobron substituted Sharratt for Delemar and Sharratt.

It is true that by the new agreement with Sharratt, the terms were somewhat varied, being made more favorable for the seller; but when Delemar and Sharratt agreed each with the other that Delemar would sell, and Sharratt would buy Delemar's interest in the plantation: it was conditioned on the idea that Delemar would be acquitted of all responsibility in the matter; this could only be done by Hobron agreeing to take Sharratt instead of Delemar and Sharratt; and without such an agreement on the part of Hobron, Delemar would have nothing to sell, and Sharratt could not buy anything. Now, in this action Delemar seeks to recover back the $843.65 paid to Hobron on the 31st of March, 1874, for which the receipt above recited was given, and the Court

was asked to charge the jury: " That if they believed from the evidence, that the receipt signed by Hobron was for an individual deposit made by Delemar and not on account of the firm of Delemar and Sharratt, and that the contract was abandoned with the consent of Hobron, and new engagements made with Sharratt, and Delemar released from all obligations, they will find for the plaintiff," which instructions were refused by the Court and in lieu thereof, the Court instructed the jury: " That the abandonment was not to be by Delemar alone, or even by Delemar and Sharratt, but by Hobron. If the jury find that for a valuable consideration or otherwise Delemar had assigned his whole interest to Sharratt, and Sharratt stands in Delemar's place, without any abandonment of the contract by Sharratt or Hobron, then, where is the testimony that the contract has been abandoned ? It is for the jury to determine whether by the testimony it is shown that Hobron has ever withdrawn from the contract with Delemar and Sharratt, or that the firm on the one part and Hobron on the other, have mutually abandoned it; that the sale and deed from Hobron to Sharratt, showed that Hobron had not abandoned, but carried out the contract." To this ruling exception has been taken.

Now we take it to be unquestioned that the right of a party to rescind a contract, in the absence of a fraud, depends solely upon the agreement of the parties, and springs either from the original terms of the contract or from a mutual assent to break it up. Story on Sales, Section 415. Where there is no fraud the recission must be voluntary and mutual. Battle vs. Rochester City Bank, 5 Barb., 414. 2 Story on Contracts, Section 484 a. Where a contract is to be rescinded at all, it must be rescinded in toto, and the parties must be put in statu quo. Hunt vs. Silk, 5 East, 452. Whether the acts of the parties amount to a rescinding, is a question of fact for the jury. 2 Story on Contracts, Section 977.

Let us apply these principles and see if the instructions to

the jury were incorrect.  It appears that the jury were instructed that the abandonment of the contract must be not only by Delemar or Delemar and Sharratt, but by Hobron as well.  This is in conformity with the idea that the abandonment must be by both parties, that is to say, mutual.  If the jury find for a valuable consideration Delemar had assigned his whole interest to Sharratt, does not Sharratt stand in Delemar's place ?  Has Delemar abandoned the contract ? or did he assign his interest in it to Sharratt ?  If he assigned his interest in it to Sharratt as these papers most clearly say, then he most clearly not only did not abandon the contract, but he put it out of his power to abandon it, and if Hobron agreed to take Sharratt in pursuance of Delemar's assignment to Sharratt which was made on condition that Delemar should be acquitted for all responsibility, he (Hobron) did so in conformity with Delemar's request as contained and implied by the said assignment.

But again, the Court said that it was for the jury to determine by the testimony, whether it is shown that Hobron ever withdrew from the contract.  Thus it was left for the jury to determine whether he had or not, but the Court remarked that the ultimate sale and deed of Hobron to Sharratt showed that Hobron had not abandoned the contract. The instruction might have been differently couched; it might have been said that the ultimate deed of Hobron to Sharratt was evidence for the jury to consider to prove that Hobron had not abandoned the contract, and it was not only evidence of that description, but very strong evidence.  And is not the assignment of Delemar to Sharratt of all his rights under the lease or contract for the sum of $4,500 conclusive evidence that he did not abandon the contract himself ? Where then is the evidence that either party to this contract, and much less both of them, ever abandoned it.

The whole sum of the case is this, that Delemar agreed to sell his interest to Sharratt for $4,500, provided that Hobron

would release him from past and future responsibilities. Hobron did agree as requested. Then was the time for Delemar to insist upon the repayment of the sum which he had advanced towards the purchase if he intended to hold Hobron for it. There is no evidence that he did so.

And again, for $4,500, Delemar assigned to Sharratt all his right, title and interest in the estate. What was his right, title and interest at the time of his assignment? All his right was to enjoy the occupation of the estate until the 24th day of January, A. D. 1879, with the privilege of extending to 1889, on payment of the reserved rent, and if he paid jointly with his partner $60,000, and complied with the other conditions to claim a deed. If he paid jointly with his partner $60,000, that is to say, if his partner paid $30,000 and he (Delemar) paid $30,000, less $843.65, with the interest which might have accumulated on the $843.65 up to the day of tendering the money for the deed. Nor did it make any difference to Hobron where the money came from; if Delemar had tendered him the whole $60,000 at any time during the subsistence of the lease, Hobron would have been obliged to have made the deed, and the question of the money would have been between him and his partner Sharratt, a matter in which Hobron could have had no interest. Nor do the words "undivided half" in the receipt make any difference, since by referring to the contract, it is evident that Hobron never agreed to sell an undivided half to anybody. It would seem that the natural course for Delemar to pursue would be to claim and receive the $843.65 from Sharratt at the time of his sale to him as a payment made on account of the purchase to be carried out by Sharratt, who would deal with Hobron accordingly.

Suppose Delemar to have died before the assignment, no one would have a right to interfere with the partnership concerns. Sharratt would have had the right to close up the business, complete the purchase, and must have been respon-

sible to his partner's heirs for all his interest in the concern including this amount paid by his partner, in part fulfillment of the contract of purchase, and Hobron would have not been responsible to Delemar's heirs.

The exceptions are overruled.

W. C. Jones for plaintiff.

A. S. Hartwell, W. R. Castle and W. O. Smith for defendant.

Honolulu, November 2d, 1876.