# CHARLESTON.

Morrison *v.* Waggy *et al.*

Submitted January 29, 1897—Decided April 21, 1897.

| 43 | 405 |
| 44 | 33 |

1. VENDOR AND VENDEE—*Option—Rescission of Contract.*
   Where a person holding a limited optional contract for the sale of a tract of land is prevented from making sale thereof by reason of a cloud on the title, or a deficiency in quantity, not known or taken into consideration at the time of the execution thereof, such person is entitled to a rescission of such contract.  (p. 409.)

2. MARKETABLE TITLE.
   A marketable title is one that is free from reasonable objection to a reasonable purchaser.  (p. 411.)

3. CLOUD ON TITLE—*Adverse Claim—Recorded Title.*

   If there is an adverse claim to a tract of land, or a considerable part thereof, evidenced by recorded title papers, with possession thereunder ·in dispute or doubtful, such adverse claim is sufficient to throw a cloud on the title, and render the same unmarketable until such title papers are canceled. (p. 409.)

4. SUIT TO CANCEL OPTION—*Parties—Quieting Title.*

   A person holding such adverse title is not a necessary party to a suit instituted to cancel a lapsed optional contract for the sale of such land for the purpose of preventing the recovery of the consideration on the grounds of the failure thereof, as it is not necessary to, nor can the disputed question of title be settled in such suit, as the plaintiff is no longer interested therein, except in so far as it rendered the title bargained for by him unmarketable. (p. 408.)

Appeal from Circuit Court, Braxton county.

Bill by J. W. Morrison against Henry Waggy and another. From a decree for plaintiff, defendants appeal.

*Affirmed.*

LINN & BYRNE, for appellants.

DULIN & HALL, for appellee.

DENT, JUDGE :

Henry Waggy and F. J. Baxter appeal from a decree of the Circuit Court of Braxton county in a chancery cause therein pending wherein they were defendants and J. W. Morrison was plaintiff. The plaintiff, in his bill, alleged: "That on the 8th day of February, 1888, he entered into a contract with defendant Henry Waggy, by which he conditionally purchased a one undivided moiety of nine hundred acres of land situated in the county of Clay, on the north side of and adjacent to Elk river, and known as the 'Jack Bend Land,' and the defendant agreed to convey the same to him by deed of general warranty. Said contract is in the words and figures following, to wit: This deed, made this 8th day of February, 1888, between Henry Waggy, of the first part, and J. W. Morrison, Jr., of the second part, all of the county of Braxton and State of West Virginia, witnesseth: That in consideration of three thousand dollars, to be paid as hereinafter specified, the party of the first part do grant, bargain, and sell unto the party

of the second part the one undivided moiety of 900 acres of land, situate in the county of Clay, on the north side and adjacent to Elk river, and known as the "Jack Bend Land," the said land to be surveyed and plat made of same at the cost and expense of the party of the first part; and this sale is by the acre at the price of $6.66⅔ per acre; said survey and plat to be made on or before the 1st day of May, 1888. The above contract is subject to the following conditions; that is to say: The party of the second part agrees, and by these presents binds himself, to pay to the party of the first part six *per cent.* interest, to be paid annually, on the said $3,000.00 aforesaid, for five years, and at the expiration of the five years from this date, if the said principal aforesaid is not paid, then, in that event, the said land is to revert back to the party of the first part; but that the said party of the second part has the privilege at any time to pay off and discharge the said principal, thereby giving to him an absolute title to said land. The said party of the second part is to pay the taxes on said land during said option, signed in duplicate. Henry Waggy. J. W. Morrison, Jr.'" That his object was to make a sale of the land for the coal and timber thereon. That it afterwards turned out that there was a considerable deficiency in said land, and that an additional two hundred acres thereof had been patented to C. C. Campbell, and was now owned by and in possession of Claiborne Pierson; which facts produced such a cloud on the title that he was unable to make a sale thereof during the life of his contract. "That he notified said Waggy of said Pierson's claim to said land, and told him that if he would free the land of said claim he would pay him the money stipulated for in said contract; but Waggy failed to do so," but after the expiration of the contract, instituted an action of *assumpsit* to recover the annual payments of interest and the taxes during the five years the contract was to run. And he prays that the suit at law be enjoined, and that the contract be canceled. Waggy demurred to the bill, and required that Claiborne Pierson and Felix J. Baxter be made parties, which was accordingly done. Waggy answered, admitting that there was only eight hundred and thirty-four acres in the two tracts of land a moiety of which he sold to the plaintiff, but he insisted that the

Pierson claim only covered one hundred and twenty-seven acres thereof, and denied that Pierson had adverse possession thereof, or that his title was a cloud on the land in controversy. And he "further says that plaintiff never made any objection to the title of respondent to the Jack Bend land, or notified him of Pierson's claim to any part thereof, until the very day or the day after said contract between plaintiff and respondent expired, when, of course, it was too late for respondent to take any steps to satisfy plaintiff of the fallacy of Pierson's claim, if any he asserted thereto." He also denies that plaintiff was prevented from making a sale thereof by reason of any cloud thereon, or that he was to make him a general warranty deed for the land, but insists that he was to convey him such title as he had without warranty. Pierson also filed his answer, setting up his title to two hundred acres of the land, and claiming the same to be indefeasible. Many depositions were taken in the case, and the court, on hearing, canceled the contract, and perpetuated the injunction. The appellants insist that the court erred in not deciding the Pierson title invalid, and in not dissoving the injunction.

It is proper to first say that both Pierson and Baxter were improperly made parties to the suit, as they were in no wise interested in the litigation, as it made no difference to them whether the court canceled the contract, or dismissed the bill for want of equity. This was not a suit for specific performance, but to cancel a contract which was *functus officio* for failure of consideration to prevent it being used unconscionably in a court of law to the peril of the rights of an innocent party thereto. 21 Am. & Eng. Enc. Law, 48. Such jurisdiction reposes in a court of equity, although defense might be made at law. Code, c. 126, s. 6; *Knott* v. *Seamands*, 25 W. Va. 99; *Bias* v. *Vickers*, 27 W. Va. 456. The mere fact that the court makes unnecessary parties to the suit does not authorize a decree between the defendants in which the plaintiff is in no wise interested. If this was a suit on this same contract for specific performance, a different rule might prevail; but, the contract being dead, the plaintiff could neither ask nor be required to take the land the title to which is in controversy. Nor could the court try an eject-

ment suit between the defendants. The demurrer to the amended bill by Pierson should have been sustained. The evidence of Waggy shows that in the month of February, 1893,—some time before the contract expired,—both by letter and interview, the plaintiff informed him that if he would clear up the title he would pay him the stipulated price for the land; thus positively contradicting the allegation of his answer to the contrary. It also appears from the evidence that, if there had been nine hundred acres of the land, and the title had been unclouded, the plaintiff was in a fair way to and might have accomplished a sale. The patent to C. C. Pierson and the deeds to Pierson were intended to cover two hundred acres of this same Shamblin land, and to that extent created a cloud on the title thereof, and must necessarily, appearing on the records, interfere with a fair sale. The question of possession is, indeed, left in grave doubt, but this very fact is sufficient to prevent a sale, as few persons care to purchase a law suit unless at least a reasonable discount or sacrifice. To increase this doubt, there is evidence tending to show that the original claimant, Shamblin, abandoned all his rights in the two hundred acres covered by the junior patent, and acquired under such patent, and admitted the possession of the patentee thereunder. The circuit court did right, therefore, not to attempt to decide the question of title between the defendants, if for no other reason because the defendants Waggy and Baxter failed to show such actual possession as would authorize a court of equity to annul the title papers of Pierson as clouds upon their title. *Christian* v. *Vance*, 41 W. Va. 754 (24 S. E. 596).

There is still a further reason why this contract should be canceled. Contracts, to be binding, must be mutual. If there is a serious difference or misunderstanding owing to the abstruse or equivocal wording of the contract, evidently showing that the minds of the parties thereto never met, then there never has been a contract, and equity will relieve the innocent party from a writing by which he has been deceived.

The plaintiff insists that he was entitled to a deed for the land, with covenants of general warranty, and he introduces evidence to show that the words "absolute title" used in the contract were so understood by the parties at

the time of the making thereof; while the defendant Waggy insists that he was to convey such title as he had without any covenants of warranty. If the defendant's contention be true, and the plaintiff was deceived thereby, the whole contract evinces a deep-laid scheme on the part of the defendant to obtain a large sum of money without consideration; for he bargains to him a tract of four hundred and fifty acres of land for the full and adequate consideration of three thousand dollars, granting the title to be indefeasible, and, if he decided not to take the land, to pay at the end of five years interest and taxes, aggregating, according to defendant's claim, about one thousand five hundred dollars,—half of the speculative value of the land,—for the mere privilege of representing an unsalable title. The object of the plaintiff was to sell, and not to purchase, himself; and, if he was deceived into accepting something that was unmarketable, equity will relieve him as against the attempted perpetration of fraud. Defendant, by denying a sale with warranty, stands self-convicted. The sale was evidently by the acre, and yet on assurance that there were four hundred and fifty acres, for the total sum agreed upon was three thousand dollars, on which plaintiff was to pay interest, which was the full consideration for that number of acres at the price agreed upon. Yet the defendant admits a considerable deficiency without regard to the Pierson claim; a deficiency so large that it could not have been taken into consideration in fixing the sum of three thousand dollars. *Pratt* v. *Bowman*, 37 W. Va. 715 (17 S. E. 210); *Anderson* v. *Snyder*, 21 W. Va. 632; *Crislip* v. *Cain*, 19 W. Va. 441. In case of a deficiency of this character, the purchaser has the right to ask for a rescission of the contract.

The cases referred to by appellants' counsel, including *Bowman* v. *Duling*, 39 W. Va. 619 (20 S. E. 567); *Hearner* v. *Morgan*, 30 W. Va. 335 (4 S. E. 406); *Kinports* v. *Rawson*, 29 W. Va. 487 (2 S. E. 85); and *Smith* v. *Parsons*, 33 W. Va. 644 (11 S. E. 68),—are not in point, from the fact that in all these cases there was an actual sale of land, and not a mere optional contract. In the former case the purchaser buys for himself, while in the latter the optional purchaser only contracts for the purpose of re-sale, and hence any defect in title or quantity

which prevents a sale destroys the consideration for the contract unless such defects were had in view at the time of the making thereof. *Rader* v. *Neal*, 13 W. Va. 373. If the parties can not be placed in *statu quo*, it is the fault of the appellant Waggy, by reason of his title being defective both as to quantity and quality; and, while he apparently loses the rent of this wild land, and is compelled to pay the taxes thereon, plaintiff loses his time and labor in attempting to make sale of an unmarketable subject, and his prospective profits had such sale been consummated. It is true, he became aware of the cloud on the title, and still continued to try to make a sale; but when he found he could proceed no further he notified the appellant Waggy of the fact, and of his readiness to pay the price agreed, provided the title was made good. The appellant, however, made no offer to do so either by way of warranty, retention of purchase money, or indemnity, but permitted the contract to lapse, and then instituted his suit at law. In 22 Am. & Eng. Enc. Law, 948, under the head of "Specific Performance," the law is stated: "The vendor must be ready and able to convey a marketable title—which has been defined to be 'a title that is free from reasonable doubt'—to all the land which he has bound himself to sell. He must be ready to convey all he has agreed to convey." Before the purchaser can successfully resist performance on his part on the ground of defect of title, there must be at least a reasonable doubt of the vendor's title,—such as affects its value, and interferes with its sale to a reasonable purchaser, rendering it unmarketable. There can be no doubt but such was the case as to the Waggy title, both as to quantity and quality, and the circuit court did not err in canceling the contract and perpetuating the injunction. The decree is affirmed.

*Affirmed.*