### SEIBEL v. PURCHASE.

(Circuit Court, D. New Jersey. December 17, 1904.)

1. VENDOR AND PURCHASER—CONTRACT FOR SALE OF REAL ESTATE—FAILURE OF VENDOR TO PERFORM—RECOVERY BY VENDEE OF CONSIDERATION PAID.

Where a vendee under an unexecuted contract for the sale of real estate has paid a part of the purchase money, and the vendor fails to complete his engagement, the vendee may disaffirm the contract and bring an action for money had and received.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, §§ 973, 982.]

2. SAME—AD DIEM PERFORMANCE—TIME—WHEN ESSENTIAL—DISAFFIRMANCE BY VENDEE.

When the vendor is in no default, but, on the contrary, is ready and willing to perform on his part, the vendee cannot recover the consideration paid. But the time fixed for performance by the vendor is deemed of the essence of the contract, so that, if he is not able to perform on that day, the vendee may elect to consider the contract at an end and sue.

[Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Vendor and Purchaser, §§ 973, 981.]

3. SAME.

Where, therefore, defendant sold plaintiff an option for the purchase of certain real estate, which was to be exercised by a specified date, and contracted to procure a conveyance of the property to plaintiff on that date, free from incumbrance, and plaintiff made a payment down, and agreed to pay a further sum, together with the purchase price of the property, on the delivery of such conveyance, and it was afterwards discovered by the parties that there was a mortgage on the property, which was not due, and, on the day when the option expired, defendant surrendered the same, and took a new one from the owner of the property, by which it was to be conveyed subject to the mortgage, which was to be assumed by the grantee, as part of the purchase price, and such a conveyance was tendered to plaintiff and refused by him, *held*, that time was of the essence of the contract; that plaintiff was not bound to accept the conveyance offered, but, on the failure of defendant to obtain the conveyance stipulated for, on the day named, he was entitled to rescind the contract, and recover the amount paid thereon, in an action for money had and received.

4. SAME—NECESSITY OF TENDER OF PERFORMANCE.

Where one party to an executory contract has placed it out of his power to perform in accordance with its terms, a tender of performance by the other party is not necessary to entitle him to rescind, and recover a payment made thereon, when the time for performance by the other has expired.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, § 1236.]

5. SAME—CONSTRUCTION—CONTINGENCY NOT PROVIDED FOR.

A provision in a contract that a partial payment made thereon shall be returned in a certain contingency does not preclude its recovery by the party making it, on the happening of another contingency, not provided for, which prevents performance of the contract by the other party.

Action on Contract. Trial to the court without a jury.

Harvey F. Carr, for plaintiff.

George A. Bourgeois and Eli H. Chandler, for defendant.

ARCHBALD, District Judge.* The material facts of the case are as follows:

(1) On May 4, 1901, the defendant, Selina A. Purchase, by agreement in writing, sold to the plaintiff, Henry J. Seibel, Jr., and he, on his part, agreed to purchase, for the sum of $7,000, an option or right to buy two certain houses and lots at Atlantic City, N. J., for the price of $40,000, which she had obtained from Mary B. Walton, the owner. This option was to be exercised by July 1, 1901, with the privilege of doing so, however, at any time during July, August, or September, provided no other purchaser was procured.

(2) On the date of the agreement with Mrs. Purchase, the plaintiff paid her $2,000 down; the remaining $5,000, by the terms of the agreement, being payable "at the time of settlement and upon the delivery to him of a deed in fee simple for said premises clear of all encumbrances whatsoever." As a further assurance, it was covenanted by Mrs. Purchase that there should be conveyed to Mr. Seibel on or before July 1, 1901, "a good and valid title in fee simple free of all encumbrances," provided he, on his part, should pay the purchase price stipulated for the property, and that, if Mrs. Walton should contest

*Specially assigned.

the validity of the option, "or refuse to make title to the property upon the tender of the consideration money," the $2,000 which he had paid should be returned. It is for the recovery of this money that the present action is brought, for which the defendant not only denies any liability, but claims by way of set-off a judgment against the plaintiff for the $5,000 additional which he was to pay.

(3) At the time of the agreement between the plaintiff and defendant with regard to the sale of the option, there was upon the property a mortgage of $17,500, which had been given by Mrs. Walton, April 24, 1900, to the executors of Henry Gerstley, deceased, and which was made payable by its terms at the expiration of three years, with interest semiannually at the rate of 5 per cent. per annum. Upon a search of the title the plaintiff discovered this mortgage, and, as it was his purpose to improve the property by putting up an apartment house, and to obtain the money to do so by an advance-money mortgage upon it, the existing mortgage was a serious obstacle from his standpoint, to the completion of the purchase. To try and obviate the difficulty, he made to Mrs. Walton, through her attorney, Mr. Townsend, a tentative proposition that, subject to the Gerstley mortgage of $17,500, she should take $23,000 for the property, of which $5,000 was to be paid in cash on or before July 1, 1901—the date to which the option was in the first instance limited—and the balance, $18,000, on or before October 1st following, with certain adjustments as to interest, taxes, water rates, and insurance for the interim. On submission of this to Mrs. Walton, she signified that such an arrangement would be acceptable; but, so far as Mr. Seibel was concerned, the matter went no further. It will be noted that by it she would get $40,500 for the property, or $500 more than by the outstanding option with Mrs. Purchase.

(4) The same day, at an interview with Mrs. Purchase at the office of Mr. Seibel's attorneys, in Philadelphia, her attention was called to the existing incumbrance on the property, and the effort which had been made to overcome it; and it was stated that Mr. Seibel was ready to carry out the arrangement which had been submitted to Mrs. Walton, and of which she had expressed her approval, provided this would be satisfactory to Mrs. Purchase. Upon learning, however, that the $5,000 which she was still to get from Mr. Seibel for the transfer of the option would have to wait until there was a final settlement, and a clear deed given for the premises, and could not be definitely secured to her meanwhile, she said she would think it over, and subsequently declined to accede to the proposition. The plaintiff thereupon notified her by letter of June 25th that he would hold her strictly to the terms of her contract; calling her attention to the fact that she had agreed to deliver the property on July 1st free and clear of incumbrances, although there was a mortgage of $17,500 on it, which the mortgagees refused to satisfy, and stating that he was willing to cancel his contract with her on return of the $2,000 which he had paid, or, if not, that he should protect his rights in whatever way was necessary, by arrangements with Mrs. Walton or otherwise. To this Mrs. Purchase replied by letter the same day that she would be ready to keep her part of the contract, and deliver the property free

of incumbrances at the time appointed, and should expect, in return, that he would adhere to his part.

(5) On June 29th, a few days later, the parties met again at the office of Mr. Townsend, in Atlantic City; Mr. Seibel being accompanied by his attorneys, and Mrs. Purchase by hers, and Mr. Townsend representing Mrs. Walton, who, though not present, was in communication with him in the building. After a general discussion of the situation, and the complication brought about by the existence of the $17,500 mortgage, it was declared by Mrs. Purchase's attorney, while admitting that it could not be got out of the way, that Mrs. Purchase wanted her $5,000 without regard to it, and would insist on its being paid or secured to her, or she would not permit Mrs. Walton to carry out the option. Thereupon Mr. Seibel, by his attorneys, tendered to Mr. Townsend, for Mrs. Walton, $5,000, according to the proposition which he had made to her a few days before, but it was refused; Mrs. Purchase declaring that it should not be accepted unless she was secured, and Mr. Townsend, after communicating with his client, stating that her contract was with Mrs. Purchase, and she would not sell without her consent.

(6) As the result of this interview, Mrs. Purchase on July 1st, in order, as she conceived, to protect her interests, secured a new agreement from Mrs. Walton, upon the same terms which had been submitted to her by Mr. Seibel, and which she had said would be acceptable to her. By it Mrs. Walton covenanted to sell and convey the property in question to Mrs. Purchase, her heirs and assigns, for the price of $40,500, payable, $5,000 upon the signing of the agreement, and $18,000, with interest, on October 1, 1901; the other $17,500 being represented by the existing mortgage on the property, to which the sale was expressly made subject. All previous agreements between the parties, both verbally and written, were also, in express terms, made null and void. Mrs. Purchase made the $5,000 down payment called for by this new agreement, and a deed was prepared and executed by Mrs. Walton, and left in her custody, to be delivered to Mr. Seibel in case he completed his part of the original agreement by October 1st. But in the end the property was sold to the United States government, and Mrs. Purchase lost it.

(7) On September 25, 1901, Mr. Seibel was formally notified in writing by Mrs. Purchase, through her attorney, that she would be ready on October 1st to carry out the terms of the contract between them, and would expect him to be so, also; stating in that connection that the $17,500 mortgage on the property was due and payable on demand, and could be paid off at any time, and would be paid off by her on October 1st. The fact is that the mortgage referred to was not, by its terms, due and payable as asserted, and could not be paid off without the consent of the mortgagees, which there is no evidence that Mrs. Purchase ever obtained.

### Discussion.

While the facts are fully reported in the foregoing findings, the rights of the parties to this litigation are to be determined, in my judgment, by the situation as it was on July 1, 1901. Not only was

that the day on which the property was to be conveyed to the plaintiff, but on it, in derogation of the existing relations with the plaintiff, the defendant, by a new and distinct agreement with Mrs. Walton, the owner of the property, annulled the original option, and took another and different one, by which all parties were thenceforth bound. By it the price was increased to $40,500, and, as a part of it, the Gerstley mortgage of $17,500, which was the main cause of the existing difficulty, was to be left as an incumbrance on the property, although the defendant had covenanted that it should be delivered clear and free. The plaintiff was thereby released from the obligation of his contract; the defendant not only having failed to perform her part of it, by having the property duly conveyed to him on the day named, but having precluded herself from doing so thereafter by the new arrangement which she had made. It may be possible, if the plaintiff had been prepared on or before October 1st to tender $45,000 to Mrs. Purchase—$40,000, the original price to Mrs. Walton, and $5,000 for herself—that an adjustment could have been made, including the satisfaction of the $17,500 mortgage, which there is some evidence that the mortgagees were ready to release if the unearned interest was paid them for the time it had yet to run. But as a matter of strict law, he was not called upon to do this, and it is by this that the case is to be judged. It was the original option that he agreed to take, and not a new one, with different terms and conditions, even though this corresponded with those which he had himself suggested; and it was to be consummated by July 1, 1901, according to his arrangement with Mrs. Purchase, and not three months later, although, as to Mrs. Walton, it may have held good, provisionally, that much longer.

Upon this showing the plaintiff, as it seems to me, is entitled to recover. It is unquestionably the law that where the vendee, under an unexecuted contract for the sale of real estate, has paid a part of the purchase money, and the vendor fails to complete his engagement, the vendee may disaffirm the contract and bring an action for money had and received. 1 Sugd. Vend. (8th Am. Ed.) 236; Feay v. Decamp, 15 Serg. & R. 227. It falls under the broad principle stated by Parker, C. J., in Griggs v. Austin, 3 Pick. 20, 15 Am. Dec. 175, that "where money is paid by one party in contemplation of some act to be done by the other, which is the sole consideration of the payment, and the thing stipulated to be done is not performed, the money may be recovered back." It is true that where the vendor is in no default, but, on the contrary, is ready and willing to perform on his part, the vendee cannot recover. Battle v. Rochester City Bank, 5 Barb. 414. But the time fixed for performance is deemed of the essence of the contract, so that, if the vendor is not able to perform on that day, the vendee may elect to consider the contract at an end and sue. Bank of Columbia v. Hagner, 1 Pet. 455, 7 L. Ed. 219; Cornish v. Rowley, 1 Wheat. Selw. 137. And that is the situation here. It was the positive undertaking of the defendant that the title should be conveyed to the plaintiff on July 1st, and that it should be free and clear, nothing of which was done or offered. This, under the authorities cited, constituted a clear breach of the contract, of which the plaintiff is entitled to take advantage without more. It is said that he made no tender so

as to put the defendant in default, and that, without this, non constat that she might not have been prepared to comply with her engagement upon the plaintiff's complying with his. But if she was, she should have shown it; and we know for a fact that she was not, of which the new arrangement entered into with Mrs. Walton is sufficient evidence, if there were nothing more. Without regard to this, how· ever, thr plaintiff not asking for performance, and the defendant being unquestionably in default for want of an ad diem compliance, a tender to complete the default was superfluous and unnecessary.

It is said, however, that the parties have undertaken to provide in the contract under what circumstances the $2,000 should be refunded, and that the plaintiff is not entitled to go outside of this. "If Mary B. Walton," it declares, "shall contest the validity of the said lease [meaning the option] or refuse to make title to the said property upon the tender of the consideration money, the party of the first part [Mrs. Purchase] hereby agrees to return to the party of the second part [Mr. Seibel] the sum of two thousand dollars paid by him for this option." Neither of these contingencies, admittedly, happened. Mrs. Walton never refused to make title to the property, neither did she at any time contest the validity of the option, and, on the contrary, was apparently ready to carry it out according to its terms, or to modify it in the way proposed by the plaintiff in order to overcome the difficulty presented by the existing incumbrance upon the property. But this does not necessarily conclude the plaintiff here. The present situation is something entirely outside of and beyond anything which is so mentioned, and was evidently one which was not contemplated by the parties. It was the possibility of difficulty with Mrs. Walton that they had in mind, and not a default on the part of either of themselves, which was not anticipated, and therefore was not touched upon. Now that this has arisen, however, it is to be met and dealt with upon general principles, without regard to the provisions of the contract referred to which do not apply to it; nor is it to go unrelieved because the contract is silent upon the subject.

Judgment is therefore directed to be entered in favor of the plaintiff for $2,000, with interest from July 1, 1901, amounting to the sum of $2,416, and the defendant's claim of set-off is denied.