## LINDSEY et al. v. HUMBRECHT.

(Circuit Court, N. D. Georgia. May 9, 1907. On Final Hearing, June 9, 1908.)

### No. 15.

1. FRAUDS, STATUTE OF—SUFFICIENCY OF WRITING—CONTRACT FOR SALE OF LANDS.

A written contract for a sale of lands, prepared by the purchaser named therein, signed by the vendors at his request, and deposited in escrow with deeds conveying the property to him, and letters and telegrams previously sent and signed by the purchaser, *held* to bear such internal evidence of their connection with each other as to constitute together a memorandum in writing signed by him sufficient to bind him under the statute of frauds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, § 188.]

2. SAME—PART PERFORMANCE.

Where, after a verbal agreement for the purchase by defendant of lands owned in severalty by complainants and the preparation of a written contract therefor, which was signed by complainants, at the suggestion of defendant and for his benefit, one of the complainants executed a deed conveying his lands to the other, and the latter executed a deed conveying all the lands to defendant, which deeds, together with the contract were deposited in escrow, such acts constituted such part performance by complainants as to take the contract out of the statute of frauds.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Frauds, Statute of, § 296.]

3. SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF LANDS—TITLE OF VENDOR.

To entitle vendors to enforce specific performance of a contract for the sale of lands, they must show their ability to give a merchantable title.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Specific Performance, § 258.]

4. VENDOR AND PURCHASER—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—
   MERCHANTABLE TITLE.

Complainants contracted to sell to defendant a large number of lots of land represented by them to be valuable because of mineral deposits contained therein. In a suit for specific performance, it appeared that as to a considerable number of the lots complainants had no paper title, but relied on title by adverse possession, that as to a large number the title was in another, although after commencement of the suit they procured the execution of a deed to them which was placed in escrow, and that as to a large number they did not own the mineral rights, *held*, that they could not give such a merchantable title to the property as to entitle them to a decree for specific performance of the contract.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 48, Vendor and Purchaser, §§ 245–248.

Marketable title, see note to New York Life Ins. Co. v. Lord, 40 C. C. A. 592.]

In Equity. Suit for specific performance of a contract for the sale of lands. On demurrer to bill.

Bunn & Bunn, James & Hutchins, and Arnold & Arnold, for complainants.

Dodd & Dodd and Dorsey, Brewster, Howell & Hyman, for defendant.

NEWMAN, District Judge. The demurrer to the bill in this case presents the question as to whether certain papers set out constitute together such a memorandum in writing as will bind the defendant to a contract for the sale of land, and, further, whether the facts alleged are sufficient to show such part performance on the part of the complainant as to require the defendant to perform the contract.

A telegram set out in the bill is as follows:

"Dallas, Ga., 5—11, 1906.

"R. O. Pitts, Com'l Bank, Cedartown, Ga. Compelled to be home Saturday. Will take the land at seven. Wire me Atlanta train 32. Has Lindsey accepted? Victor J. Humbrecht."

And the following:

"Cedartown, Ga., May 11th, 1906.

"Victor J. Humbrecht, c/o Seaboard train 32, Atlanta. Lindsey accepts your offer of seven per acre. R. O. Pitts."

And this letter:

"R. O. Pitts, Esq., Pres. Commercial National Bank, Cedartown, Ga.—Dear Sir: I am inclosing you my check for $10,000 to be put to my credit. I have just arrived, and must leave immediately for my home in Atlantic City. Kindly acknowledge receipt of this, and I will advise you Monday when I will be able to go down and close arrangements.

"Yours very truly, Victor J. Humbrecht."

And this letter of May 14, 1906:

"R. O. Pitts, Esq., Pres. The Com'l Bank, Cedartown, Ga.—Dear Sir: In reply to your letter of 11th inst. will say that I shall leave Philadelphia on next Monday night, the 21st inst. reaching your town early Wednesday morning. In the meantime, Mr. Lindsey can have an agreement prepared, say $5,000 to be paid on that date, and $15,000 more when titles are examined and deeds prepared, (which I suppose will take up some little time, according

to the number of conveyances), and the balance in one, two or three years, or sooner if desired. * * *

"Yours very truly,                               Victor J. Humbrecht."

Also letter of May 19, 1906:

"R. O. Pitts, Esq., Prest. Com'l Bank, Cedartown, Ga.—My dear sir: Kindly credit the enclosed check for $10,000 to my account. I will reach your town on Tuesday evening instead of Wednesday morning, as I expected. Hoping to see you on my arrival, I am

"Yours very truly,                               Victor J. Humbrecht."

A copy of an agreement is set out in the pleadings between Mrs. N. C. Lindsey and George W. Lindsey of Polk County, Ga., and Victor J. Humbrecht, party of the second part, of Philadelphia, Pa. The agreement is signed only by Mrs. N. C. Lindsey and G. W. Lindsey, and is attested by W. H. Trawick, and R. O. Pitts, N. P., Polk county, Ga. The contract, in substance, sets out that Mrs. N. C. Lindsey and G. W. Lindsey own a large tract of improved and unimproved lands in Polk county, Ga., containing 137 40-acre lots; a part of said land being owned by Mrs. Lindsey in her own right, the remainder by G. W. Lindsey the tract of land being identified by a drawing or map attached to the agreement. It is further recited that the Lindseys had on that day agreed to sell and convey unto Humbrecht the entire tract of 137 lots as numbered in the map attached, the conditions of the sale being the consideration of $7 an acre, exclusive of the right of way of the East & West Railroad, terms $10,000 cash, or within 30 days from date, and the 30 days being to give an opportunity to Humbrecht to examine the title to the property; $10,000 when the entire tract is delivered to Humbrecht, the remainder of the purchase money to be paid on or before two years from date, with interest at the rate of 7 per cent. from January 1, 1907, or such time as Humbrecht received possession; the Lindseys to account to Humbrecht for the interest on $10,000 at 7 per cent. from date until they should deliver possession of the entire tract to Humbrecht. The Lindseys are to have taken up and canceled all mortgages, judgments, and liens before any cash is paid. G. W. Lindsey is to execute a deed to Mrs. Lindsey for his lots, and Mrs. Lindsey is to execute her warranty deed to Humbrecht conveying to him the entire 137 lots. All the papers above described were to be delivered in escrow with the Commercial Bank of Cedartown, Ga., attached to a copy of the agreement. It is further agreed that Humbrecht shall have 30 days to examine the title of all the lots, provided so much time shall be required; and, provided the same is clear of all mortgages, judgments, and liens and outstanding recorded title superior to that held by the Lindseys then the Commercial Bank is authorized to deliver to Humbrecht the two deeds named—that is from G. W. Lindsey to Mrs. N. C. Lindsey and Mrs. N. C. Lindsey to Humbrecht—and to deliver to the Lindseys the mortgage, the note, and one of said checks for $10,000 the second check for $10,000 to be delivered as soon as possession of the premises is delivered to Humbrecht. The examination of the title to the land to be in good faith. The bill alleges that the deeds from Lindsey to Mrs. Lindsey and from Mrs. Lindsey to Humbrecht (profert

of which is made) were executed and deposited in escrow in the Commercial Bank, with the agreement.

Do these letters and telegrams and the contract and deeds bear internal evidence of their connection with each other so as to bind Humbrecht to the alleged contract for the sale of the land in question? In the first telegram Humbrecht proposes to take the land "at seven." The answer is: "Lindsey accepts your offer of seven per acre." The letter of May 11th, signed by Humbrecht, says "Lindsey can have an agreement prepared," and afterwards the contract referred to above was signed by the Lindseys, and R. O. Pitts was one of the witnesses, and W. H. Trawick the other witness. In his letter of May 14th Humbrecht says he will pay $5,000 when the agreement is prepared, and $15,000 more when titles are examined and deeds prepared, balance in one, two, and three years, being practically $20,000 cash, balance on time. On May 12th he had sent $10,000, and on May 19th he sent $10,000, making $20,000 sent to Pitts. Undoubtedly, judged by the papers alone, this $20,000 was sent for the purpose of carrying out the arrangement to buy the land of the Lindseys. It seems to me reasonably clear that these papers, taking their contents, and without any extrinsic evidence, would be sufficient to show that they referred to each other, and that the first telegram from Humbrecht indicated that he would take the land afterwards embodied in the agreement from the Lindseys at seven dollars an acre, and the Lindseys, not only by Pitts' telegram of May 11th, but by signing the agreement and executing the deeds deposited in escrow, indicated their acceptance of the offer.

It is well settled by authority that the writing required by the statute may consist of more than one paper, and, if taken together without extrinsic evidence it is sufficient to show the character of the contract, its terms, and the lands or interests therein conveyed, it is a good memorandum in writing. In the case of North & Company v. Mendel & Bros., 73 Ga. 400, 51 Am. Rep. 879, while the decision was against the sufficiency of the writing in that case, I think the language used in the opinion by Justice Hall shows that, if the papers had been as in this case, the contract would have been upheld:

"We are of opinion that this memorandum, taken by itself or in connection with the telegram, does not satisfy the requirements of the statute. Without such evidence it would be impossible to connect those papers as forming parts of the memorandum of the agreement relied on. The statute does not require that all the terms of the contract should be agreed to or written down at one and the same time, nor on one piece of paper; but, where the memorandum of the bargain is found on separate pieces of paper, and where these papers contain the whole bargain, they form such a memorandum as will satisfy the statute, provided the contents of the signed papers makes such reference to the other written paper or papers as to enable the court to construe the whole of them together as containing all the terms of the bargain. If, however, it be necessary to adduce parol evidence, in order to connect a signed paper with others unsigned, by reason of the absence of any internal evidence in the signed paper to show a reference to, or connection with, the unsigned papers, then the several papers taken together do not constitute a memorandum in writing of the bargain, so as to satisfy the statute"—citing 1 Benjamin on Sales, § 220, and note 24.

There is a slight variation between the terms of the agreement as set out in Humbrecht's letter of May 14th and that contained in the agreement signed by the Lindseys. I do not know that this is material, however. The difference is that in Humbrecht's letter he says:

"Mr. Lindsey can have an agreement prepared, say $5,000 to be paid on that date and $15,000 more when the titles are examined and deeds prepared, and the balance in one, two, or three years, or sooner if desired."

In the agreement signed by the Lindseys it provides:

"Terms: $10,000 cash or within thirty days from date, the thirty days being to give opportunity to Humbrecht to examine the title to the property; $10,000 when the entire tract is delivered to Humbrecht, the remainder of the purchase money to be paid on or before two years from date."

Really the terms contained in the agreement signed by the Lindseys are more favorable to Humbrecht than the terms he proposed in his letter. In this letter he makes the entire $20,000 payable when titles are examined and deeds prepared, and in the agreement only $10,000 is to be paid at this stage of the transaction, the other $10,000 when possession is delivered. The other difference is that in the letter he says "balance in one, two, or three years, or sooner if desired," and in the agreement signed by the Lindseys it is "on or before two years from date." Having said in his letter "sooner if desired," he can hardly have ground of complaint with "on or before two years." These differences are hardly so material or important as to prevent the paper signed by the Lindseys from being a substantial acceptance of Humbrecht's terms stated in his letter. In my judgment all these papers taken together show such a memorandum in writing signed by the party to be charged therewith as binds him under the statute of frauds as now contained in the statute laws of Georgia.

Another view of the case is this: Complainants allege in an amendment to the bill as follows:

"On May 22, 1906, said Humbrecht came to Cedartown, and immediately thereafter all the details of the purchase and sale of said property of the said Lindseys, heretofore described, were agreed on by defendant and petitioners. Upon said agreement being reached, defendant reduced the terms thereof to writing, and sent such writing by his attorney to petitioners for their signatures, and he did thus have them to execute the memorandum of the trade. All the terms of such sale are contained in such writing or memorandum prepared by defendant and herein copied. Petitioners charge that the name of defendant was inserted in said memorandum by him in such a manner and for the purpose of authenticating the whole instrument and making the same binding upon himself."

While there is some conflict in the adjudged cases, there is considerable authority to the effect that it is immaterial where the name of the party to be charged appears in the memorandum, provided it was so placed for the purpose of charging or binding himself. It is true that the statute (Civ. Code 1895, § 2693) requires the writing to be "signed by the party to be charged therewith," or some person by him lawfully authorized. Requiring a paper to be signed would seem to indicate that the name should be placed at the end of the paper. But the allegation in the amendment to the bill, "that the name of defend-

ant was inserted in said memorandum by him in such manner and for the purpose of authenticating the whole instrument and making the same binding upon himself," is admitted, so far as it is well pleaded, by the demurrer; and, unless the instrument itself contradicts this, and indicates that it is still to be signed by Humbrecht after the Lindseys had signed it, it may raise an important question in this case. About this, however, no opinion is expressed at present. Independently of the foregoing, I am satisfied that whether the writing be such as to bind Humbrecht under the statute of frauds to a compliance with the alleged contract for the purchase of the land in question there is such a part performance on the part of the Lindseys as takes the case out of the operation of the statute.

It is alleged in the bill and conceded by the demurrer that part of the lots of land in controversy were owned in severalty by Mr. G. W. Lindsey and part by Mrs. N. C. Lindsey, and in compliance with Humbrecht's suggestion and for his benefit, in order to put the title in more convenient and better shape for transmission to him, that Lindsey conveyed to Mrs. Lindsey all of his lots of land, and that she thereupon made a deed of her own lots and those thus conveyed to her by her husband to Humbrecht, and put the deeds in escrow in the Commercial Bank of Cedartown. This, in my opinion, is such a part performance as would make it a fraud on the Lindseys for Humbrecht to withdraw from the contract.

I have only considered and disposed of two grounds urged in argument: (1) That there was no such memorandum in writing as would bind Humbrecht; and (2) there was no such part performance as would take the case out of the statute of frauds.

The demurrer will be overruled.

## On Final Hearing.

This case has been referred to a standing master, who has filed his report, to which exceptions have been taken, the exceptions argued, and the matter submitted. The report of the master deals carefully and specifically with the various questions raised by demurrer, and which were considered and determined in the opinion filed when the demurrer was overruled. These questions were considered then, of course, in the light of the allegations made in the bill. The master has considered them and decides them in connection with the defendant's answer and the evidence submitted in the case.

It is claimed by counsel for complainant that the master's findings are contrary to the views expressed by the court in the opinion filed overruling the demurrer. It is unnecessary to determine whether that is true or not, and to go over the questions heretofore considered in view of one of the findings made by the master in his report. He finds that the complainants have failed to exhibit in evidence a good and sufficient marketable title to the land in question to authorize a decree in their favor.

The report of the master on this subject is as follows:

"We now come to the next, and last, question made by the pleadings, to wit, the willingness and ability of complainants to perform their part of

this alleged contract. On the hearing before the master, the greatest possible latitude was allowed the complainants upon the question of their title, and the character of the title which they were able and willing to convey to the defendant in pursuance of the contract. Every muniment of title and substantially all of the oral testimony as to possession offered by the complainants were admitted in evidence to illustrate this point. Much of this testimony was admitted over strenuous objections of counsel for the defendant. The evidence shows that complainants' title is in inextricable confusion. Many of the deeds to several of the lots have been lost. There is no paper title to a number of them, and Mr. Lindsey testifies that an abstract of his titles could not be made. As heretofore observed, the defendant was attracted to this property by an advertisement in the Seaboard Magazine, which is set out in his answer, and which was authorized by the complainant Lindsey something over a year prior to the negotiations between these parties. While the complainant Lindsey repudiated some of the statements in said advertisement, and although it contains some extravagant statements, still, from complainant Lindsey's own testimony it was substantially correct. Among other things, which complainant testified was correct, in said advertisement, was that the property 'contained extensive deposits of very high grade brown hematite ore.' The property was advertised at $7 per acre, and the opinion of the representative of the magazine, who claims to have examined it carefully, was that the mineral rights alone were worth this amount. [The advertisement was introduced and admitted in evidence, and marked as an exhibit, but has been mislaid. It is set out in the defendant's answer.] Complainant did not own the mineral rights to a number of the lots in controversy. Defendant insisted that he wanted whatever mineral rights there might be, if he bought the lots. Defendant insisted that it would be in his way for some one else to have these mineral rights, if he wanted to make a townsite there and have an abstract of title made. Defendant Humbrecht insisted all along upon the mineral rights, if he bought the property, and complainant Lindsey told defendant that he would do all he could to get the titles to said mineral rights. Complainant Lindsey further testified that he signed the papers knowing that he did not own the mineral rights; that, when the papers were drawn up, the mineral rights were put in as though he owned them; and that he signed the paper knowing that he did not own them. At the time this alleged contract was said to have been made, the title to about 35 of the lots of land in dispute was in J. M. Veach Company. Complainant Lindsey conveyed this property on September 13, 1893, and the land has been returned for taxation in the name of Veach Company since 1895. There are 10 lots to which there is no paper or color of title whatever. Out of these, there are five lots which the complainants did not get possession of under any title or claim of right whatever. There was a railroad right of way which was discussed during the negotiations, but nothing was said about the unusual easement rights which were included in the contract that complainant Lindsey had with the railroad. Nothing was said to defendant Humbrecht during all of the negotiations about the title to the Veach lots, or about a large debt which complainant Lindsey owed his wife. The evidence shows that complainant Lindsey owed debts which were liens upon the property, amounting to something near $24,000, including a mortgage and judgment held by his wife. It is true that since this alleged contract Mr. Lindsey has obtained deeds to some of the mineral rights, and these deeds have been obtained since this suit was filed in Polk superior court. It is also true that J. M. Veach Company has signed a deed conveying the 38 lots to complainant Lindsey, but this deed was executed after this suit was commenced, was never delivered, but filed in escrow. The title claimed by complainant Lindsey is based mainly on adverse possession either seven years under color of title or 20 years without color of title. As to a great many of these lots, the character of complainant's possession is unsatisfactory, and of a transitory nature, and, while it may be that complainant can produce satisfactory evidence of his title, that submitted to the master was not of such a character. Coming down to the execution of the two deeds, one from Mr. Lindsey to his wife, and the other from Mrs. Lindsey to the defendant, I am decidedly of the opinion that the

deed made by Mr. Lindsey to Mrs. Lindsey is voidable, if not void, and can be repudiated by Mrs. Lindsey, if she desires to do so. The cases referred to in a former part of this report from the Georgia Court of Appeals, as well as the Supreme Court, clearly indicate that such a conveyance, to be valid, must have the sanction of an order of the judge of the superior court of the county. In addition to this criticism, the deed from Mr. Lindsey to his wife has never been delivered, and the deed from Mrs. Lindsey to the defendant has no consideration expressed therein, and these are the deeds that the complainants set forth as their title and their part performance of this contract. While I have no doubt that these complainants, on account of their age, their high character and standing, and their long residence in the community in which they live, will never be disturbed in the possession and enjoyment of their property, yet, from all the evidence submitted, I find that the title offered by the complainants to the defendant is not a merchantable title, and such a one as a court of equity would force upon an unwilling vendee."

It does not appear from this record so far as I have been able to ascertain, that Humbrecht made any question about the title of the Lindseys to the land in controversy, or that he declined to go on with the trade on that ground. Notwithstanding this, it seems clear that in a proceeding like this, for specific performance, it would be necessary for the complainants to show that they had a good title to the land, and would be able to convey the same to Humbrecht; that, is a "marketable title" as it is frequently called in the books. The title should be such as not only to enable the purchaser to hold the land without question, but to sell it without difficulty if he desires. It is true that as to parts which are simply incumbered by mortgages or other liens and as to such parts as only lack the paper evidence of title, and which could be cured, a purchaser might not be justified in refusing to complete the transaction on the ground of lack of good title in the seller. In this case, however, in view of the facts found by the master with reference to the title and its condition, it can hardly be said to be in such condition that the defendant should be required to stand by and await an effort to perfect it. I understand that mere captious objections ought not to be allowed to prevail, or perhaps objections to the title to a very small portion of the land where the title to the great body of a large tract like this is perfect. That is not true, however, of this title. The reasonable objections to it go beyond this in my judgment. While it is doubtless true, as the master finds, that the Lindseys may hold this land as long as they live without objections, and that their descendants might hold it without interruption indefinitely, still, if it should be forced upon Humbrecht, and he desired to sell it, and it should be put in the hands of scrutinizing attorneys, it is perfectly clear that the title would be rejected. In view of this the necessary conclusion is that the complainants have not made out such a case in this respect, without considering the other questions involved, as to justify or authorize a decree in their favor.

The defendant is entitled to a decree dismissing the bill, with costs to be apportioned as suggested by the master.