# Wytheville.

## SACHS AND OTHERS V. OWINGS.

June 14, 1917.

Absent, Burks, J.

1. VENDOR AND PURCHASER—*Sufficiency of Title.*—Where the vendor of real property, under an executory contract of sale, agreed to deliver to the vendee a good and sufficient deed for the property in question, with general warranty and covenants of title, the purchaser is entitled to require a marketable title to be conveyed to him by his vendor, but not a record title, nor one which an abstract of title would show to be good, or free of liens or encumbrances, nor one in fact free of liens or encumbrances.

2. VENDOR AND PURCHASER—*Marketable Title—Time as Essence of Contract.*—A vendee, under a contract for a good and sufficient deed, with general warranty and covenants of title, is entitled to require from his vendor a conveyance of a marketable title on the day fixed by the contract for completing the contract, where the action is at law, as in the instant case; time always being considered of the essence of the contract where it is construed at law.

3. VENDOR AND PURCHASER—*Time as Essence of Contract—Resort to Equity—Rescission by Vendee.*—If either party wishes time after the day fixed, for completing the contract, he must resort to a court of equity where, in proper cases, the rigid rule of the common law on this subject will be relaxed. The vendee under a contract for a good and sufficient deed, with general warranty and covenants of title may, at law, elect to rescind the contract, if his vendor cannot, on the day fixed for completing it, convey to him a marketable title, and in such case, as he is not in equity asking the enforcement of the contract and his vendor is in default already, the vendee is not required to tender payment to his vendor of any balance due of unpaid purchase money, or to do any further act himself in completion of the contract, such as tendering notes for deferred payments contracted for, or the like, which would in such case be superfluous.

Syllabus.

4. VENDOR AND PURCHASER—*What Constitutes Marketable Title.*—A vendee who is entitled only to a marketable title, can only demand such title as a reasonably well-informed and intelligent purchaser, acting upon business principles, would be willing to accept.

5. VENDOR AND PURCHASER—*Marketable Title—Liens.*—A vendee is entitled to receive a title free of judgment and tax liens, but a vendee cannot elect to rescind and treat a contract as rescinded on the ground that the title is not a marketable title because there are encumbrances on the land purchased, if they are of such character and amount that he can apply the unpaid purchase money to the removal of the encumbrances. This can be done where the amount of the encumbrance is definite, does not exceed the unpaid purchase money due, is presently payable (as was the case with a delinquent tax lien in the instant case), and its existence is not a matter of doubt or dispute, or the situation is not such with respect thereto as to expose the vendee to litigation on the subject.

6. VENDOR AND PURCHASER—*Title—Judgment Liens Barred by Statute of Limitations.*—Judgment liens barred by the statute of limitations do not, even at law, render a title unmarketable, and though not barred by the statute where they are for definite amounts, and less than the purchase money due and unpaid would discharge, and are presently payable, they do not render the title unmarketable.

7. VENDOR AND PURCHASER—*Marketable Title—Easement—Telephone Lines.*—Where an easement of a telephone company to maintain its telephone line erected along the margin of the land, which was the subject of an executory contract of sale, was visible upon the land at the time the contract was made, the purchaser is presumed to have taken into consideration the existence of this encumbrance in fixing upon the amount of the purchase money. And where such easement was not an injury, but a benefit to the market value of the land, it cannot be considered to be an encumbrance of which the vendee could complain.

8. CONTRACT UNDER SEAL—*Oral Release.*—At law, the common-law rule that an executory contract under seal can be modified or abrogated only by an instrument of equal dignity, *i. e.*, by one under seal, has not been relaxed. It is only in equity, where the distinctive equitable principles applicable in that forum may be invoked, that there has been a relaxation of such rule.

9. VENDOR AND PURCHASER—*Rescission of Contract Under Seal by Parol.*—A mutual agreement to rescind an executory contract under seal for the sale of land, if executed by actual cancellation or destruction of the contract, operates to annul

it. But a parol executory agreement to cancel the contract could not operate, at law, to release the obligations of the contract under seal.

Error to a judgment of the Hustings Court of the city of Petersburg, in an action at law by motion, in the nature of an action of assumpsit. Judgment for plaintiff. Defendants assign error.

*Reversed.*

STATEMENT OF THE CASE AND FACTS BY SIMS, J.

·This is an action at law by motion, in the nature of an action of assumpsit, by the defendant in error, plaintiff in the court below (hereinafter designated "plaintiff"), against the plaintiffs in error (hereinafter designated "defendants"), to recover back the $500 cash payment made by the former to the latter upon a contract of purchase of real estate, on two grounds:

1. Because at the time fixed for completing the contract the defendants—the vendors—could not convey a marketable title; and

2. Because on the day before the time fixed for completing the contract the defendants—the vendors—released the plaintiff—the vendee—from the obligation of the contract in consideration of the mutual agreement of plaintiff and defendants to cancel the contract, and that for the same consideration the defendants promised and agreed to refund the said $500 to the plaintiff.

The said contract was in writing and under seal.

The material portions of the contract are as follows:

"This Agreement of Sale, made and entered into, in duplicate, this 14th day of August, 1915, by and between Walter Sachs and Fannie Sachs, his wife, parties of the first part, and Irvin Owings, of Washington, D. C., * * * party of the second part;

"Witnesseth, that for and in consideration of the mutual promises and agreements hereinafter set forth, and especially in consideration of the sum of five hundred dollars ($500.00) cash in hand paid by the party of the second part to the parties of the first part, receipt whereof is hereby acknowledged, the said parties of the first part do hereby agree to sell to the said Irvin Owings, and the said Irvin Owings doth hereby agree to buy of the said Sachs all that certain tract of land," (here follows description of the land) "and the said terms and conditions of purchase of the said tract of land herein agreed to be sold by the said Sachs and bought by the said Owings are as follows, to-wit:"

"(1) Sixteen thousand dollars ($16,000.00) is to be the amount paid by the said party of the second part to the parties of the first part, and of this sum five hundred dollars ($500.00) has already been paid by the party of the second part to the parties of the first part to bind this bargain, and the remainder of the purchase price, or fifteen thousand, five hundred dollars ($15,500.00) is to be paid on August 19, 1915, and upon the payment of the balance of the purchase price, the said parties of the first part agree to deliver to the said party of the second part a good and sufficient deed for the property hereinabove mentioned, with general warranty and covenants of title; but, in the event the payment of the remaining $15,500.00 is not made on or before August 19, 1915, then the $500.00 already paid on account of this transaction shall become forfeited by the party of the second part to the parties of the first part, and this agreement in all other respects shall be null and void.

"Witness the following signatures and seals.

(Signed)

WALTER SACHS,   (SEAL)
FANNIE SACHS,   (SEAL)
IRVIN OWINGS   (SEAL) "

There was a trial by jury in the court below. Both the plaintiff and defendant introduced testimony. There was a demurrer to the evidence of the defendants by the plaintiff, and a verdict of the jury in favor of the plaintiff, subject to such demurrer.

The demurrer to evidence was sustained by the trial court and judgment was entered by it in favor of the plaintiff against the defendants for said $500.00, together with interest and costs, in accordance with said verdict.

There were other proceedings in the case, which however are immaterial in the view we take of it on the merits, and hence no reference thereto need be made by us.

On the merits of the case the following were the further material facts before the jury:

At the time fixed for completing the contract, to-wit, August 19, 1915, the defendants had a good and perfect title to said land, subject, however, to the following subsisting encumbrance and lien thereon:

1. An easement of the Petersburg Telephone Company to maintain its telephone line erected along the margin of said land next to and alongside of the Western Union Telegraph Company's telegraph line, which is located next to and along one side of such land.

2. Unpaid taxes for the year 1912, amounting to $4.84, which amount was *presently payable.*

There were also three alleged judgments, but they appeared of record as barred by the statute of limitations, and (if not barred by the statute of limitations) were for definite amounts, the aggregate of which, together with said delinquent taxes, were less in amount than the balance of unpaid purchase money due and payable on the day fixed for completing the contract, and they were all *presently payable.*

There was also a coupon judgment for taxes, but the effect of an agreement of counsel is to eliminate that from the case. If there had been no such agreement, however, this

judgment would have fallen within the description of the three judgments above referred to, except that it was not barred by the statute of limitations.

With respect to the telephone line, the following should be noted:

1. The testimony for defendants tended to show that at least a portion of it, alongside the said land, had been erected and was obvious to the plaintiff, had he looked about him, when the latter was on the land prior to his purchase. There was sufficient evidence for the jury to have inferred that this easement was visible and notoriously affected the physical condition of the land at the time of the purchase.

2. The evidence, as it must be regarded by us, is to the effect that the telephone line was a benefit, rather than an injury, to the market value of the land.

3. The telephone line, if considered as marring the appearance or outlook from the land, was no more objectionable than the Western Union Telegraph line alongside of it.

With respect to the conveyance of said land, the facts were that a deed from defendant, in proper form, in strict accordance with the provisions of said contract, was duly executed by defendants and tendered to the plaintiff on said date fixed for completing the contract, to-wit, August 19, 1915, that he declined to accept the deed, or to comply with the terms of the contract on his part by paying the $15,-500.00 balance of purchase money; and that plaintiff offered to cancel the contract if the $500.00 was paid back to him and "call the deal off."

The testimony was conflicting on the point as to whether defendants, or either of them, ever agreed to the latter proposition, the testimony for defendants positively denying any such agreement, and the testimony for plaintiff being to the effect that there was such an agreement, which, if it existed however, was oral, not in writing and not under seal.

*Lassiter & Drewry*, for the plaintiff in error..

*Hamilton & Mann*, for the defendants in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

The rules of law governing all the points arising in this case are well settled, so that a limited reference to the authorities, without discussion of them, will be deemed sufficient.

This is an action by a purchaser of land to recover back a payment on account of purchase money under an unexecuted contract on the grounds, (1) that the title of the vendor was not such as the purchaser was entitled under the contract to require; and (2) on the ground that the purchaser was released by the vendor from the contract of purchase under seal by the subsequent oral agreement above referred to.

We will pass upon these defenses in the order in which we have stated them, and incidentally upon the points of law arising therefrom urged upon us in argument by counsel on both sides of the case.

1. Concerning the title the plaintiff had the right to require:

The plaintiff had the right to require only such title as he contracted for. He did not contract for a record title (*Mundy* v. *Garland*, 116 Va. 937, 83 S. E. 491), nor for one which an abstract of title would show to be good, or free of liens or encumbrances; nor one in fact free of liens or encumbrances. What he contracted for, indeed, was, by the strict terms of his contract, only "a good and sufficient deed * * * with general warranty and covenants of title." It is well settled, however, that, even at law, a purchaser under such a contract is entitled to require a *marketable title* to be conveyed to him by his vendor. Maupin on

Marketable Title to Real Estate, secs. 238, 242; 36 Am. & Eng. Anno. Cas., p. 1022, note; *Bank of Columbia* v. *Hagner*, 1 Pet. (U. S.) 455, 7 L. Ed. 219; *Seibel* v. *Purchase,* (N. J. C. C. of U. S.), 134 Fed. 484; Note 70 Am. Dec. 739; *Little* v. *Paddleford*, 13 N. H. 167; *Newberry* v. *French*, 98 Va. 479, 36 S. E. 519; 39 Cyc. 1909, 1983; *Mundy* v. *Garland, supra.* He is entitled to require this on the day fixed by the contract for completing the contract, where the action is at law, as in the instant case; time always being considered of the essence of the contract where it is construed at law. Maupin on Marketable Title, &c., sec. 310; *Bank of Columbia* v. *Hagner, supra; Siebel* v. *Purchase, supra.* If either party wishes time after the day fixed, for completing the contract, he must resort to a court of equity where, in proper cases, the rigid rule of the common law on this subject will be relaxed. The vendee under such a contract as that in evidence may, at law, elect to rescind the contract, if his vendor cannot, on the day fixed for completing it, convey to him a marketable title (see authorities above cited), and in such case, as he is not in equity asking the enforcement of the contract and his vendor is in default already, the vendee is not required to tender payment to his vendor of any balance due of unpaid purchase money, or to do any further act himself in completion of the contract, such as tendering notes for deferred payments contracted for, or the like, which would in such case be superfluous. Maupin on Marketable Title, &c., sec. 87; *Morange* v. *Morris*, 34 Barb. (N. Y.) 311.

2. Now with respect to the question whether the title which the deed from the defendants, which was tendered in the instant case, would have conveyed was a marketable title:

A vendee who is entitled only to a marketable title, "can only demand such title as a reasonably well informed and intelligent purchaser, acting upon business principles, would be willing to accept." 3 Devlin on Deeds, sec. 1474. To

the same effect see, *Rife* v. *Lybarger*, 49 Ohio St. 422, 31 N. E. 768, 17 L. R. A. 403; *Morrison* v. *Waggy*, 43 W. Va. 405, 27 S. E. 314.

A vendee is entitled to receive a title free of judgment and tax liens. Maupin on Marketable Title, &c., sec. 124; 10 A. & E. Ann. Cas., note, p. 248. But—

A vendee cannot elect to rescind and treat the contract as rescinded on the ground that the title is not a marketable title because there are encumbrances on the land purchased, if they are of such character and amount that he can apply the unpaid purchase money to the removal of the encumbrances. Maupin on Marketable Title, &c., secs. 246, 304; *Woodman* v. *Blue Grass Land Co.*, 125 Wis. 489, 103 N. W. 236, 104 N. W. 920. This can be done where the amount of the encumbrance is definite, does not exceed the unpaid purchase money due, is presently payable (as was the case with the delinquent tax lien in the instant case), and its existence is not a matter of doubt or dispute, or the situation is not such with respect thereto as to expose the vendee to litigation on the subject. (See authorities last cited; also *Miller* v. *Bronson*, 26 R. I. 62, 58 Atl. 257; *Lindsey* v. *Humbrecht* (C. C.), 162 Fed. 548.)

As to the three alleged judgment liens unreleased of record, on the date fixed for the completion of the contract, but which were barred by the statute of limitations: If they had not been barred by the statute of limitations, and had not been of such character and amounts that they would have been extinguished by application of the purchase money as aforesaid, such judgments would, at law, have rendered the title unmarketable. Maupin on Marketable Title, &c., sec. 307. Only in equity could the vendor have obtained time in which to have had them released of record by proving payment, etc. However, being barred by such statute, they did not, even at law, render the title unmarketable. *Rife* v. *Lybarger*, *supra*. Moreover, they were for definite amounts, and less than the purchase money due

and unpaid would have discharged, and were presently payable, so, for this reason also, they did not render the title unmarketable. (See authorities above cited on this subject.)

As to the telephone line easement:

(a) As the jury may have inferred from the evidence that this easement was visible upon the land at the time of the purchase, as above noted, we must so infer. In such case the purchaser is presumed to have taken into consideration the existence of this encumbrance in fixing upon the amount of the purchase money. Maupin on Marketable Titles, &c., sec. 127, p. 300, and authorities collated in note thereto; *Scott* v. *Moore*, 98 Va. 668, 37 S. E. 342, 81 Am. St. Rep. 749. See also notes on the subject in 3 L. R. A. 790, 4 L. R. A. (N. S.) 314; 8 L. R. A. (N. S.) 418, 30 L. R. A. (N. S.) 833, and 38 L. R. A. (N. S.) 33.

(b) As the jury may have found from the evidence that this easement was not an injury, but a benefit, to the market value of the land, we must so regard it; in which case it cannot be considered to be an incumbrance of which the plaintiff could complain.

We, therefore, conclude that at the time fixed for completing the contract in the instant case, the vendors could have, and by the deed which they tendered to the plaintiff would have, conveyed to him a marketable title, such as was contracted for.

We come now to the remaining question for our determination, on the merits of the case, namely:

2. Was there a release of the plaintiff by the defendants from the obligation of the contract, by the alleged subsequent parol agreement, above referred to in the statement of facts?

At law, the common law rule that an executory contract under seal can be modified or abrogated only by an instrument of equal dignity, *i. e.*, by one under seal, has not been relaxed. It is only in equity, where the distinctive equitable principles applicable in that forum may be invoked, that

there has been a relaxation of such rule. 2 Minor on Real Prop., sec. 1315; 4 Wigmore on Ev., sec. 2455; *Campbell v. Alsop,* 116 Va. 46, 81 S. E. 31; Jones on Ev. (1912—2d Pocket Ed.), sec. 443. The argument for the abolition of this rule (see authorities last cited and also note 7 Va. L. Reg. 204) might be addressed with great force to the legislature. It is not within the function of courts to change well established rules of law.

Further: It will be noted that the contract in the instant case was not in fact cancelled by mutual agreement. If such a mutual agreement had been executed by actual cancellation or destruction of the contract, it would have operated to have annulled it. 2 Minor's Inst. (3d ed.), p. 742. There was, however, merely an alleged parol agreement to cancel the contract—itself an executory agreement. The mutual relinquishment of their respective rights under the contract by the parties thereto would have been a sufficient consideration to have supported the executory agreement for its release; but the latter being by parol, could not, had it existed as a fact, operate, at law, to release the obligations of the contract under seal.

However, in the instant case, upon the conflict of evidence on this point, the jury may have found, and we must therefore hold, that no agreement was made by defendants to release the plaintiff from the obligation of the contract, before the time fixed for its completion.

For the foregoing reasons, we are of opinion that the trial court committed error in sustaining the demurrer of the plaintiff to the evidence of the defendants, because of which the judgment complained of must be reversed, set aside and annulled, and this court will enter such judgment as the trial court should have entered.

*Reversed.*